UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| KENNETH P. SWARTS, et al., | ] |
| Plaintiffs, | ] |
| v. | ] |
| | ] CV-03-BE-504-W |
| FALCON FINANCIAL LLC, | ] |
| Defendant. | ] |

ENTERED
AUG 13 2004

### MEMORANDUM OPINION

This case comes before the court on the defendant's Motion for Summary Judgment (Doc. 17). Three counts brought by the plaintiffs remain: (1) breach of written and oral contract; (2) fraud; and (3) fraudulent suppression.[1] Having reviewed the submissions of all parties, including supplemental briefs, and having heard oral argument on the motion at a February 4, 2004 hearing, the court finds that no genuine issues of material fact exist and that the defendant is entitled to judgment as a matter of law. The court hereby GRANTS the defendant's motion in its entirety for the reasons stated on the record and discussed below.

### I. Facts

*A. Background*

Plaintiff Kenneth P. Swarts, ("Swarts") had spent his career working in car dealerships,

---

[1] On June 12, 2003, the court granted the defendant's motion to dismiss as to the plaintiff's counts for unjust enrichment; negligent hiring, training, supervision, and retention of employees; negligence; and breach of fiduciary duty. These three counts are all that remain.

1

and in 2001 he was eager to purchase one of his own.[2] He contacted defendant Falcon Financial ("Falcon"), a national leader in car dealership finance, to discuss what dealerships might be economically viable for purchase. Swarts agreed to obtain the financial information about a particular dealership and forward that information to Falcon, who would review the financial information and advise Swarts about whether a particular dealership was financially acceptable for Falcon's business purposes. Swarts had never previously purchased or owned a car dealership.

Swarts became interested in a Jasper, Alabama, Honda dealership, which had been offered for sale by the previous owner, Mr. Bob Reid. Falcon informed Swarts that the dealership was viable, and Swarts quickly moved to sign a Buy-Sell agreement with Reid on May 5, 2001. Swarts testified that he relied on Falcon's recommendation in investigating the purchase of Jasper Honda. Swarts purchased the dealership for a price of $5.5 million, comprised of a $400,000 down payment, $4.5 million to be financed by Falcon, and the remaining difference to be made up by Mr. Reid retaining twenty-five percent of the dealership's equity.

### B. The Financing Process

Falcon's transaction with Swarts was implemented over time, and was evidenced by several important documents.

**May 16, 2000 Letter Agreements**

On May 16, 2000, Swarts executed two Letter Agreements with Falcon outlining the

---

[2] Jasper Automotive Mgmt., Inc., and Jasper Automotive, Inc. are also plaintiffs in this case, though their involvement as plaintiffs separate from Swarts, if any, is not clear to the court.

terms and conditions pursuant to which Falcon would consider making a loan to finance Swarts' purchase of Jasper Honda. The first Letter Agreement[3] included terms and conditions for the due diligence process that Falcon would implement; these terms and conditions included the requirement that Swarts obtain third party reports at Swarts' expense regarding the dealership's valuation, site quality and environmental condition, and that the results of such reports be satisfactory to Falcon.

The second Letter Agreement[4] authorized Falcon to begin its "standard underwriting and due diligence efforts" for the loan. The letter requested that Swarts

> [p]lease sign and return this letter and the authorization form attached hereto, which allows certain third parties the opportunity to conduct due diligence investigation on behalf of *us*, necessary to substantiate the financial, legal and factual premises upon which any commitment to lend will be based. Further, you have agreed to provide *us* with payment in the amount of $25,000...to be applied to the fees and expenses associated with required third party due diligence reports and legal review and documentation.

(Emphasis added). The second Letter Agreement also included terms by which Swarts represented to Falcon that all of the information and financial data Swarts provided to Falcon/third parties in their due diligence investigations would be accurate and devoid of any misstatements. This authorization stated, in relevant part:

> You, the undersigned, agree and acknowledge that Consultants have been retained by Falcon, LLC to provide diligence and consulting services relative to the above referenced auto dealership. Further, you represent that information discussed with Consultants in any oral interview or provided to Consultants in any manner of communication...is the best data available at the time such was provided to Consultants.

---

[3] *See* Ex. 2 to the Defendant's Evidentiary Submission (Doc. 19).

[4] *See* Ex. 3 to the Defendant's Evidentiary Submission (Doc. 19).

3

Swarts signed these agreements and authorizations with the benefit of counsel.[5] At one point, Swarts testified during his deposition that he understood the May 16 letters to mean that due diligence was to be performed on behalf of Falcon exclusively.[6] Swarts contests this, citing other parts of his deposition testimony indicating he was not sure for whom the due diligence was to be performed,[7] and a later affidavit explaining that he thought the due diligence performed was for the benefit of both Swarts and Falcon.[8]

Swarts testified that on numerous occasions he asked the Falcon representative, Tom Pavlik, if Swarts needed to conduct his own review of the Jasper Honda dealership records. In response to each inquiry, Pavlik assured Swarts that it was not necessary, and that probing the financial viability of Jasper Honda was what Swarts was paying Falcon $25,000 to do. Swarts alleges that on several occasions, he was told due diligence was being done on Swarts' behalf. Swarts has testified that he "absolutely" relied on Falcon to inform him that the decision to buy Jasper Honda was a wise one, as Falcon did not give Swarts full access to all of the documents used in the due diligence process.[9]

**"Addback" Communications**

---

[5] *See* Ex. 1, Deposition of Kenneth Swarts, pp. 100-101 to the Defendant's Evidentiary Submission (Doc. 19).

[6] *See* Ex. 1, Deposition of Kenneth Swarts, p. 107 to the Defendant's Evidentiary Submission (Doc. 19).

[7] *See* Ex. 1, Deposition of Kenneth Swarts, p. 242 to the Defendant's Evidentiary Submission (Doc. 19).

[8] *See* Ex. 15 to the Plaintiff's Evidentiary Submission (Doc. 19).

[9] *See* Ex. 1, Deposition of Kenneth Swarts, pp. 190-191 to the Defendant's Evidentiary Submission (Doc. 19).

As part of his commitment to provide Falcon with all financial information relevant to Falcon's decision to lend, Swarts provided Falcon with information concerning "addbacks."[10] Addbacks, as understood by the court, are certain expenses incurred by a business that were not essential to running that business, but were nonetheless incurred at the discretion of the previous owner–here, Reid–and expensed to the business. Because these expenses would cease upon the transfer of ownership, and not be incurred by the new owner, the amount of these personal, non-essential expenses was added back to the business when determining its true value.

Reid supplied Swarts with an itemized list of addbacks during the initial Buy-Sell agreement negotiations. This list of add-backs sent by Swarts to Falcon included an $18,000 expense representing money donated monthly by the dealership to Reid's church, and a $3,000 expense representing money paid monthly to the church's secretary. This list of addbacks Swarts totaled $933,000 per year.[11]

Falcon informed Swarts that insufficient equity was in the deal for Falcon to fund the loan, and asked if any other addbacks existed.[12] On June 21, 2000, Swarts faxed Falcon, informing it that some of the construction cost of Reid's lakefront home had been paid from the dealership's funds, among other costs.[13] Thus, by June 21, 2000, Swarts had notified Falcon of the $18,000 monthly payment to Reid's church; the $3,000 monthly payment to Reid's church's

---

[10] *See* Ex. 1, Deposition of Kenneth Swarts, pp. 146-158 to the Defendant's Evidentiary Submission (Doc. 19).

[11] *See* Ex. 4 to the Defendant's Evidentiary Submission (Doc. 19).

[12] *See* Ex. 1, Deposition of Kenneth Swarts, p. 159 to the Defendant's Evidentiary Submission (Doc. 19).

[13] *See* Ex. 5 to the Defendant's Evidentiary Submission (Doc. 19).

secretary; and the $10,000 monthly payment towards Reid's lakefront home.

Subsequently, the parties learned that these "addbacks" were illusory; therefore, the court will refer to these addbacks as "the false addbacks."

### July 12, 2000 Commitment Letter

Satisfied with the value/viability of Jasper Honda, Falcon agreed to finance the remainder of Swarts' purchase price to Reid. On July 12, 2000, Swarts and Falcon executed a Commitment Letter stating that Falcon agreed to make the loan subject to certain terms and conditions.[14] These terms included a provision that the loan was subject to a third-party business valuation acceptable to Falcon. With the advice of counsel, Swarts signed the agreement.[15]

After signing the Commitment Letter, Swarts continued to update Falcon on the status of various addbacks, with the hope of convincing Falcon not to abandon the deal. The addback lists Swarts send to Falcon at this time also included the false addbacks that had been on the June 21 list.

### October 11, 2000 Loan Agreement

Swarts and Falcon closed their loan on October 11, 2000. One of the documents evidencing the loan was a Loan Agreement, in which Swarts expressed certain representations and warranties made by Swarts to Falcon "to induce [Falcon] to enter into this Agreement and to make the Loan."[16]

---

[14] *See* Ex. 8 to the Defendant's Evidentiary Submission (Doc. 19).

[15] *See* Ex. 1, Deposition of Kenneth Swarts, p. 111 to the Defendant's Evidentiary Submission (Doc. 19).

[16] *See* Ex. 11 to the Defendant's Evidentiary Submission (Doc. 19).

Some of the representations dealt with the dealership's financial records. Per the Loan Agreement, Swarts guaranteed that the all of the information provided by Swarts to Falcon was accurate. That information included the false addback information. Swarts testified that he had the opportunity to read the Loan Agreement, but chose not to read it; he also testified that he had the opportunity to have an attorney review the Loan Agreement and all the other loan documents prior to signing, but failed to have this done.[17]

The Loan Agreement also contained a merger clause, which reads in relevant part:

> Each party hereto acknowledges that no representations or warranties have been made by or on behalf of Lender or relied upon by Borrower or Guarantor pertaining to the subject matter of this Agreement or any of the other Loan Documents, and all prior statements, representations and warranties, if any, are totally superseded and merged into this Agreement and the other *Loan Documents....*

(Emphasis added). The Loan Agreement defines the term "Loan Documents" to "mean and include this Agreement, the Note, the Mortgage, the Security Agreement, the Environmental Indemnity (if any), each Guaranty (if any), each Limited Guaranty (if any) *and all other documents, instruments, and agreements delivered to Lender in connection with the Loan.*" (Emphasis added).

**October 11, 2000 Mortgage**

The parties also signed a mortgage on October 11,[18] which contained the following section dealing with reliance:

---

[17] *See* Ex. 1, Deposition of Kenneth Swarts, pp. 123-127 to the Defendant's Evidentiary Submission (Doc. 19).

[18] *See* Ex. 12 to the Defendant's Evidentiary Submission (Doc. 19).

7

> NO RELIANCE ON LENDER. The members, general partners, shareholders, directors, officers, principals...of Mortgagor are experienced in the ownership and operation of properties similar to the Property, and *Mortgagor and Lender are relying solely upon such expertise and business plan in connection with the ownership and operation of the Property. Mortgagor is not relying on Lender's expertise, business acumen or advise in connection with the property.*

(Emphasis added). Another section of the mortgage states that Falcon was not affirming or warranting the accuracy of any of the financial information provided to it relating to the dealership. Swarts did not read the mortgage, either, although he had the opportunity to do so.[19]

**October 11, 2000 Closing Conditions Agreement**

Further, Swarts and Falcon signed a Closing Conditions Agreement[20] on October 11, which stated Swarts was to make an independent review of Jasper Honda's financial conditions within seven days of closing, with a right to obtain a refund of a portion of the purchase price in the amount of any financial discrepancies discovered in the review. The undisputed evidence shows that Swarts never performed this independent review.

*C. Discovering the Addbacks Problem*

Following the loan closing and purchase of the car dealership, Falcon required Swarts to submit certain financial information to Falcon, including periodic financial statements. On February 26, 2001, Falcon wrote Mr. Roger Barlow, Swarts' accountant, to request an itemized list of "all discretionary expenses incurred prior to and after closing of the loan which will be

---

[19] *See* Ex. 1, Deposition of Kenneth Swarts, pp. 123-124 to the Defendant's Evidentiary Submission (Doc. 19).

[20] *See* Ex. 13 to the Defendant's Evidentiary Submission (Doc. 19).

added back to cash flow for the [2001 annual] compliance review."[21]   According to the information known at closing, this list should have detailed any and all addbacks previously disclosed by Reid to Swarts and passed along to Falcon.  However, the list Barlow forwarded to Falcon excluded the false addbacks listed earlier.[22]  Later, Falcon realized that these three addbacks were fabricated; Reid had never paid these expenses from his business' cash flow, and Swarts and Falcon had overvalued the Jasper Honda dealership based on these false addbacks.

Swarts discovered the truth about these three addbacks in April or May 2001, upon reviewing the dealership's financial records.  This same financial information had been in Swarts' possession since October 11, 2000.  Swarts confronted Reid about these false addbacks later, settling the matter between them in an undisclosed agreement.[23]

Swarts now sues Falcon for failing to catch the false addbacks earlier, claiming Falcon had contracted to perform due diligence on Swarts' behalf, and had failed to meet that obligation. The remaining counts in this case are (1) breach of oral and written contracts; (2) fraud; and (3) fraudulent suppression.[24]   The defendant seeks summary judgment on all these counts.

## II. Summary Judgment Standard

When a district court reviews a motion for summary judgment under Federal Rules of Civil Procedure 56, it must determine two things: (1) whether any genuine issues of material fact

---

[21] *See* Ex. 17 to the Defendant's Evidentiary Submission (Doc. 19).

[22] *See* Exs. 19, 20 to the Defendant's Evidentiary Submission (Doc. 19).

[23] *See* Ex. 1, Deposition of Kenneth Swarts, p. 89 to the Defendant's Evidentiary Submission (Doc. 19).

[24] *See* note 1, *supra* (discussing dismissed counts).

exist; and, if not, (2) whether the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c). To succeed, the moving party bears the burden of establishing both prongs of the summary judgment test. The nonmoving party may defeat the motion for summary judgment by establishing either genuine issues of material fact or that the movant is not entitled to judgment as a matter of law.

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986) (quoting Fed. R. Civ. P. 56). The party seeking summary judgment can meet this burden by offering evidence showing no dispute of material fact, or by showing that the nonmoving party's evidence fails to meet some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. Rule 56, however, does not require "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." 477 U.S. at 323.

When the moving party has met his burden, Rule 56 (e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P 56 (e)). The responding party does not need to present evidence in a form admissible at trial; "however, he may not merely rest on his pleadings." 477 U.S. at 324. "The plain language of Rule 56 (c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails

to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

In responding to a properly-supported motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986). If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986) (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989).

## II. Discussion

### A. Breach of Contract: Written Contract

Swarts alleges that Falcon "agreed and contracted with the Plaintiffs to review, advise upon, and issue a due diligence report as to certain financial records regarding the purchase of [Jasper Honda]", and that "subsequent to the loan and purchase transactions, [Swarts] discovered that Falcon had not performed their [sic] duties as agreed." Falcon argues in response that the written terms of the various documents involved demonstrate that the due diligence undertaken was for Falcon's exclusive use in determining whether to loan Swarts the funds to purchase the dealership. The court agrees with Falcon on this point, and finds that a reasonable reading of the documents in this case establishes that the due diligence efforts paid for by Swarts were undertaken for the sole benefit of Falcon in deciding whether to make the loan to Swarts.

The second Letter Agreement of May 16, 2000 authorized "certain third parties the opportunity to conduct due diligence investigation on behalf of *us*" (emphasis added). Swarts

11

contends he understood "us" to mean "Falcon and Swarts." The court finds no ambiguity through the use of the word "us" in this document; one only has to look to the next sentence in the Letter Agreement, which refers to the $25,000 payment made to "us," to understand how unreasonable Swarts' proposed reading is. "Us" in the context of this Letter Agreement does not mean "Falcon and Swarts," but rather Falcon exclusively. As further evidence of the reasonableness of this interpretation, the July 12, 2000 Commitment Letter signed by Swarts included a provision that the loan was subject to a third-party business valuation *acceptable to Falcon*.

To demonstrate that a breach of contract has occurred, a party must prove the following elements: (1) the existence of a valid contract between the parties; (2) its own performance under that contract; (3) *the other party's breach, or failure to perform under the contract*; and (4) damage sustained as a result of the other party's non-performance. *Southern Med. Health Sys., Inc. v. Vaughn*, 669 So. 2d 98, 99 (Ala. 1995) (emphasis added). The plaintiffs have not identified an express term in any of the documents used in this transaction that has been breached by the defendant. Without an identifiable breach, Swarts' breach of written contract claims must fail as a matter of law, and the defendant is entitled to summary judgment.

### B. Breach of Contract: Oral Contract

In addition to their claim for breach of written contract, the plaintiffs also seek damages for breach of an oral contract, alleging that Falcon representatives orally promised to conduct a due diligence investigation on their behalf. The plaintiffs claim this oral promise operated to modify the written terms of the Letter Agreements, clarifying beyond a doubt that Falcon's due diligence activities were being performed on behalf of Swarts.

The defendant challenges the effect of this alleged oral contract on three grounds, which the court will now address. While the court finds that this alleged oral contract is supported by consideration, and is not voided by the Alabama statute of frauds, the court also finds that the alleged oral contract cannot survive the merger clauses written into the Loan Agreement and mortgage, and thus cannot constitute grounds for breach.

First, the court finds that sufficient consideration exists for the parties' alleged oral promise. "It is well settled that...in order to constitute consideration for a promise, there must have been an act, *a forbearance*, a detriment, or a destruction of a legal right, or a return promise, bargained for and given in exchange for the promise." *Berryhill v. Reeves*, 705 So. 2d 505, 508 (Ala. Civ. App. 1997) (emphasis added) (citations and quotations omitted). Forbearance may be implicitly, as well as explicitly, bargained for between parties; *See Air Engineers, Inc. v. Reese*, 217 So. 2d 66, 72 (Ala. 1969). The court finds a genuine issue of material fact as to whether Swarts forbore his own due diligence activities in implied consideration for Falcon's alleged promise to conduct due diligence. Thus, the defendant is not entitled to summary judgment on this ground.

Further, the court is not convinced this alleged oral contract violates the Alabama Statute of Frauds. Alabama Code § 8-9-2 (7) provides that "[e]very agreement or commitment to lend money, delay or forebear repayment thereof or to modify the provisions of such an agreement or commitment" is void unless authorized in writing. However, "the text of § 8-9-2 (7) refers to an 'agreement' or 'commitment' *to lend money*. Alabama law recognizes a difference between agreements whereby money *is* lent in return for terms of repayment and so-called 'loan commitment' agreements, i.e., 'a lender's binding promise to a borrower to lend a specified

13

amount of money at a certain interest rate, usu[ally] within a specified period and for a specified purpose (such as buying real estate).'" *Rozell v. Childers*, 2004 WL 363162 at *3 (Ala. Civ. App., Feb. 27, 2004) (emphasis in original) (citations omitted).

      Likewise, here the May 16, 2000 letter agreements that Swarts claims to have modified via oral contract were not the actual agreements to lend money, but were instead preliminary agreements, closer to the 'loan commitment' agreements found outside of the statute of frauds in *Rozell*. Indeed, the first letter agreement states that it "is a preliminary proposal and does not represent a commitment on [Falcon's] part to lend, but rather identifies potential terms and conditions under which Falcon may be prepared to issue a commitment[.]" Thus, because the written documents supposedly modified are not included within the scope of § 8-9-2 (7), the statute of frauds has no operation in this context. Therefore, the court cannot grant summary judgment on this defense.

      However, the court cannot overlook the effect of the merger clause written into the Loan Agreement. Alabama law clearly establishes the exclusive nature of merger clauses:

> A merger clause...is a portion of a particular contract that restates the rationale of the parol evidence rule within the terms of the contract. *These clauses are properly used to ensure that preliminary negotiations, whether oral or written, are either memorialized in the final contract or are not considered part of it.* Moreover, a merger clause establishes that a written agreement is a completely integrated document, into which all prior and contemporaneous negotiations are merged. Merger clauses thus create a presumption that the writing represents an integrated, that is, the final and complete, agreement of the parties.

*Harbor Village Home Center, Inc. v. Thomas*, 2003 WL 22753432 (Ala., Nov. 21, 2003) (emphasis added), *citing Environmental Sys., Inc. v. Rexham Corp.*, 624 So. 2d 1379, 1383 (Ala. 1993), *Crown Pontiac, Inc. v. McCarrell*, 695 So. 2d 615, 618 (Ala. 1997), *and Crimson Indus.,*

*Inc. v. Kirkland*, 736 So. 2d 597, 601 (Ala. 1999).

Recognizing the legal effect of merger clauses generally, the court now turns to the specific language of the Loan Agreement. The merger clause in the instant case reads in relevant part:

> Each party hereto acknowledges that no representations or warranties have been made by or on behalf of Lender or relied upon by Borrower or Guarantor pertaining to the subject matter of this Agreement or any of the other Loan Documents, and all prior statements, representations and warranties, if any, are totally superseded and merged into this Agreement and the other *Loan Documents...*

(Emphasis added). The term "Loan Documents" is defined by the loan agreement to "mean and include this Agreement, the Note, the Mortgage, the Security Agreement, the Environmental Indemnity (if any), each Guaranty (if any), each Limited Guaranty (if any) *and all other documents, instruments, and agreements delivered to Lender in connection with the Loan.*" (Emphasis added).

Reading this broad definition in conjunction with the equally broad merger clause, the court can only conclude that the May 16, 2000 Letter Agreements fall within the scope of the Loan Agreement merger clause. The Letter Agreements were delivered to Falcon "in connection with" this loan, making those agreements "Loan Documents." The alleged oral contract clearly attempts to modify–and, in fact, contradict–the subject matter of those "Documents." Thus, per Alabama law, the alleged oral contract was merged into the clear terms of the Letter Agreements, and its terms cannot be considered as grounds on which a suit for breach can be based. The terms of any alleged oral contract disappear from the transaction altogether, and the terms of the written Loan Agreement alone define the authoritative conditions of the parties' agreement. The Loan Agreement and other Loan Documents supercede any alleged oral agreement, and

the plaintiffs' breach of oral contract claim must also fail. The court finds no genuine issues of material fact, and concludes that the defendant is entitled to judgment as a matter of law on this count.

### C. Fraud

Swarts also alleges Falcon fraudulently misrepresented the viability of the "addbacks" to induce Swarts to borrow money. "Misrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently acted on by the opposite party, constitute legal fraud." Ala. Code § 6-5-101 (1975). The defendant is entitled to summary judgment on the plaintiffs' fraud claim for three reasons. First, Swarts has failed to establish any false representation made *by Falcon* to Swarts.[25] Second, any reliance was not reasonable under the circumstances, and, third, the statute of limitations bars any claim for fraud.

Under the "reasonable reliance" standard used by Alabama courts, if a plaintiff, "acting as a reasonably prudent person exercising ordinary care, would have discovered the 'true facts' before acting on the alleged misrepresentation, then, as a matter of law, the plaintiff could not have relied on the representation." *Gilmore v. M & B Realty Co.*, L.L.C., 2004 WL 1475424 at *7 (Ala., July 2, 2004) (citing *Foremost Ins. Co. v. Parham*, 693 So. 2d 409 (Ala. 1997)).

The court finds that a reasonably prudent person in Swarts' position, using ordinary care to read documents before signing them, would have discovered that Falcon was not conducting

---

[25] Even taking as true Swarts' claim that Falcon represented to him that it was conducting due diligence on his behalf, Swarts failed to present any evidence that Falcon had any knowledge or any means of knowing that Reid's representations about addbacks were false. Even if Swarts could somehow link some fraudulent statement to Falcon which he has failed to do, his fraud claim fails for the other reasons given.

16

due diligence for Swasrts' benefit, and thus Swarts' fraud claim must fail as a matter of law. The two letter agreements of May 16, 2000 and the commitment letter of July 12, 2000 make clear that any subsequent due diligence investigation performed by Falcon would be done on behalf of *Falcon,* and not Swarts, in determining whether to make the loan. *See* II.A., *supra*.

Likewise, the court is confident a reasonably prudent person would not purchase a $5.5 million dollar business without reviewing and understanding the legal significance of the documents implementing the transaction before signing them. At closing, Swarts had the opportunity to read the loan agreement and mortgage documents; he failed to do so. Swarts had the opportunity to have legal counsel read the documents; he failed to have his attorney do so. Under the terms of the closing conditions agreement, Swarts was given seven days to conduct his own independent review of Jasper Honda's financial conditions; Swarts never performed this review. The Alabama Supreme Court has held that if a "purchaser blindly trusts, where he should not, and closes his eyes where ordinary diligence requires him to see," he is not entitled to maintain an action for fraud. *Ex parte ERA Marie McConnell Realty, Inc.*, 774 So. 2d 588, 591 (Ala. 2000). The court finds Swarts to be just this kind of "blind" purchaser. He cannot saddle the defendant with responsibility for his failure to attend to the details of his business venture, or the fraud perpetrated by Reid on both Swarts and Falcon.

Finally, the plaintiffs' fraud claim fails because it falls outside of the applicable statute of limitations. "Under the reasonable reliance standard, the trial court can enter a judgment as a matter of law in a fraud case based on the expiration of the statutory limitations period where the undisputed evidence indicates that the party or parties claiming fraud in a particular transaction were fully capable of reading and understanding their documents, but nonetheless made a

deliberate decision to ignore written contract terms that clearly contradicted the alleged misrepresentations." *Gilmore*, 2004 WL 1475424 at *7 (citations and quotations omitted). Swarts had the opportunity to review and understand the closing documents in October 2000. He also had available to him in October 2000 all the financial data that, upon later review, revealed Reid's fraud to Swarts. He even was <u>required</u> by the closing document to review that data within seven days of closing, but did not do so until April or May of 2001. Had he made this review in October as he was required to do, he would have discovered the misrepresentation at that time. Therefore, the statute of limitations began to run in October, 2000. The complaint in this case was filed March 7, 2003, well past the two-year statute of limitations provided for fraud claims. *See* Ala. Code § 6-2-3.

For all these reasons, the plaintiffs' fraud count fails as a matter of law, and summary judgment is due to be granted in favor of the defendant.

### D. Fraudulent Suppression

Finally, Swarts alleges Falcon "occupied towards [Swarts] the position of advisor, and owed certain duties and responsibilities to [him]," but failed to inform Swarts of the true value of the false addbacks, even going so far as to discourage Swarts from conducting an independent audit of his own.

In its defense, Falcon alleges Swarts has failed to prove a *prima facie* case of fraudulent suppression. The elements of a claim for fraudulent suppression are (1) that the defendant had a duty to disclose an existing material fact or facts; (2) that the defendant suppressed that fact or facts; (3) that the defendant's suppression induced the plaintiff to act or to refrain from acting;

18

and (4) that plaintiff was thereby proximately damaged. *State Farm Fire & Cas. Co. v. Owen,* 729 So. 2d 834, 837 (Ala. 1998). In addition, a defendant can only be liable for suppression if it had knowledge of the material fact it supposedly suppressed. *Id.*

The court finds no evidence in the record that indicates Falcon knew that any of the financial information concerning Jasper Honda, including the false addbacks, was inaccurate. Rather, Swarts provided and warranted the accuracy of any addback information to Falcon. On this basis alone, Swarts' fraudulent suppression claim fails as a matter of law.

Alternatively, the court is not convinced Falcon had a legal "duty to disclose" the existence of the false addbacks to Swarts. Whether a duty to disclose exists requires consideration of "(1) the relationship of the parties; (2) the relative knowledge of the parties; (3) the value of the particular fact; (4) the plaintiff's opportunity to ascertain the fact; (5) the customs of the trade; and (6) other relevant circumstances." *Owen,* 729 So. 2d at 842-43. The question of whether a party has a duty to disclose is a mixed question of law and fact for the court to decide. *Id.*

Swarts and Falcon were both misled by Reid's false representations about addbacks. Similarly, both Swarts and Falcon had available the financial documents necessary to discover the false addbacks. Both parties approached the transaction with qualified and experienced legal and financial counsel, although Swarts chose not to consult his attorney at closing. Finally, while Falcon did provide some dealership search functions before the Jasper Honda transaction, the court is not convinced that this fact alone elevates its relationship with Swarts beyond the lender-borrower relationship clearly established by the various documents at issue.

For all these reasons, the court finds Falcon owed no "duty to disclose" the presence of

Case 7:03-cv-00504-KOB   Document 43   Filed 08/13/04   Page 20 of 20

the false addbacks to Swarts of which it had no knowledge, and thus Falcon cannot be liable to Swarts for fraudulent suppression. Thus, the defendant is entitled to summary judgment on this claim as well.

## IV. Conclusion

For all these reasons, the court finds that the plaintiffs have failed to demonstrate any genuine issues of material fact, and that the defendant is entitled to judgment as a matter of law. The defendant's motion for summary judgment is GRANTED in its entirety; this case is hereby dismissed with prejudice. The court will enter a separate order granting summary judgment for the defendant.

DONE and ORDERED this 13th day of August, 2004.

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE